UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DENISE ANN ROUSSIN,

     Plaintiff,

v.                            Case No.:  2:20-cv-905-SPC-MRM

COMMISSIONER OF SOCIAL
SECURITY and UNITED STATES
ATTORNEY,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Denise Ann Roussin filed a Complaint on November 16, 2020.  (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 19).  For the reasons set forth herein, the Undersigned recommends that the decision of the Commissioner be **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.     **Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

## II.   Procedural History

Plaintiff protectively filed for a period of disability and disability insurance benefits on December 27, 2017, alleging a disability onset date of the same day.  (Tr. at 16).[1]  Plaintiff's claim was initially denied on May 3, 2018, and again upon reconsideration on September 14, 2018.  (*Id.*).  Plaintiff requested an administrative hearing, which was held on December 10, 2019, before Administrative Law Judge ("ALJ") Eric Anschuetz.  (*Id.* at 38-71).  The ALJ issued an unfavorable decision on February 21, 2020.  (*Id.* at 13-31).  The Appeals Council subsequently denied Plaintiff's request for review on October 8, 2020.  (*Id.* at 1-7).  Plaintiff filed her Complaint in this Court on November 16, 2020.  (Doc. 1).  The case is ripe for review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. (Tr. at 18). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of December 27, 2017. (*Id.*). At step two, the ALJ found that Plaintiff has the following severe impairments: "generalized anxiety disorder, major depressive disorder recurrent and without psychotic features, chronic lower back pains, and status-post recurrent kidney stones (20 [C.F.R. §] 404.1520(c))." (*Id.*). The ALJ, at step three, determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

3

listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, and 404.1526)." (*Id.* at 19).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform less than the full range of light work as defined in 20 [C.F.R. §] 404.1567(b) such that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. Claimant can stand/walk for up to 6 hours in an 8 hour workday and sit for up to 6 hours in an 8 hour workday. Claimant can never climb ladders and scaffolds. Claimant can frequently climb ramps and stairs. Claimant has no limitation in balance. Claimant can only occasionally stoop, kneel, crouch, and crawl. Claimant is limited to simple tasks. Claimant can persist at tasks for a 6-8 hour period at an appropriate pace and sustain this level over normal work days and work weeks. Claimant requires no more than normal supervision and she can have occasional interaction with supervisors, coworkers, and the public. Claimant must be permitted to alternate sitting and standing up to a maximum of 30 minute intervals while remaining at her work station.

(*Id.* at 21). The ALJ also determined that "[t]he claimant is unable to perform any past relevant work (20 [C.F.R. §] 404.1565)." (*Id.* at 25).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 [C.F.R. §§] 404.1569 and 404.1569(a))." (*Id.* at 26). Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform work as a routing clerk (*Dictionary of Occupational Titles* ("DOT")# 222.687-022), raw shellfish preparer (DOT# 311.674-014), and account investigator (DOT# 241.367-038). (*Id.* at 26).

For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 27, 2017, through the date of this decision (20 [C.F.R. §§] 404.1520(g))." (*Id.* at 27).

## IV.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

**V.      Analysis**

On appeal, Plaintiff raises four issues.  As stated by the parties, the issues are:

1.      Whether the ALJ appropriately resolved apparent inconsistencies between the VE['s] testimony and the DOT;

2.      Whether the ALJ appropriately weighed the opinions of APNP Sojdak and Dr. Chang;

3.      Whether the ALJ erred in finding Plaintiff could perform work at [a specific vocational preparation ("SVP")] 2; and

4.      Whether the ALJ improperly circumvented the Medical-Vocational Guidelines ("GRIDS").

(Doc. 19 at 14, 19, 31, 33).  The Undersigned finds it appropriate to address the issues in a more logical order that mirrors the sequential steps of the ALJ's analysis. Accordingly, the Undersigned will address the parties' first issue – which considers whether the ALJ erred at the final step of the sequential equation – last.

For the reasons discussed below, the Undersigned finds that remand is required at the final step of the sequential analysis because the ALJ failed to discharge his duty to resolve apparent conflicts between the VE's testimony and the DOT.  Remand is, therefore, appropriate on that issue.  However, the Undersigned finds that none of the other issues raised require remand.

A.      **Whether the ALJ Appropriately Weighed the Opinions of APNP Sojdak and Dr. Chang.**

In her second argument, which the Undersigned addresses first, Plaintiff asserts that "[t]he ALJ failed to properly weigh, and substituted his own medical judgment for, the opinions of APNP Sojdak and Dr. Chang." (Doc. 19 at 19 (emphasis omitted)). In support, Plaintiff notes that the ALJ found both APNP Sojdak's and Dr. Chang's opinions unpersuasive. Plaintiff highlights that the ALJ supported his persuasiveness analysis of APNP Sojdak's opinions by finding that APNP Sojdak did not cite specific clinical diagnostic evaluations or abnormalities or specific treatment notes. As to Dr. Chang's opinion, Plaintiff notes that the ALJ found that Dr. Chang only examined Plaintiff once and that the opinion was internally unsupported and inconsistent with the observations of other providers. (*See id.* (citing Tr. at 24-25)).

Plaintiff maintains that APNP Sojdak treated Plaintiff monthly since April 2018 and opined that "there was medical documentation of depressive disorder characterized by depressed mood" and that Plaintiff had severe specific non-exertional limitations. (*See id.* 19-21 (citing Tr. at 905, 908, 909-10)). Plaintiff also highlights that "APNP Sojdak stated her opinions were provided within a reasonable degree of medical certainty, Plaintiff's condition existed since December 27, 2017, and APNP Sojdak had read the medical records before and after the onset date of disability." (*Id.* at 19 (citing Tr. at 906, 911)). Likewise, Plaintiff cites Dr. Chang's

findings as to Plaintiff's non-exertional limitations.  (*Id.* at 21 (citing Tr. at 641-43, 645-46)).

Plaintiff argues that "[t]he ALJ's reliance on alleged inconsistencies with opinions of unspecified providers," whom Plaintiff believes to specialize in physical conditions, does not constitute sufficient cause to reject the opinions of APNP Sojdak and Dr. Chang, both of whom specialize in mental impairments.  (*Id.* at 22). Plaintiff essentially contends that the ALJ substituted his judgment for that of the medical opinions of APNP Sojdak and Dr. Chang.  (*See id.*).

Plaintiff also notes that under Eleventh Circuit precedent, the ALJ must state with particularity the weight given to each opinion and the reasons therefor, and Plaintiff argues that while the Commission amended the Regulations in 2017, the new regulations still require the ALJ to articulate how he considered the opinions, specifically addressing supportability and consistency.  (*See id.* at 22-23 (citations omitted)).  Likewise, Plaintiff appears to argue that an ALJ must give substantial weight to a treating physician's opinions unless there is good cause to disregard them.  (*See id.* at 23 (citations omitted)).  Finally, Plaintiff maintains that an ALJ cannot substitute his judgment for that of the medical experts or for the diagnosis of a medical professionals.  (*Id.* at 23-25 (citations omitted)).

Ultimately, Plaintiff argues that "[i]n failing to properly weigh the opinions of APNP Sojdak and Dr. Chang and in substituting his own medical opinions for those of these mental health experts, the ALJ issued a decision unsupported by substantial evidence."  (*Id.* at 25).

In response, Defendant argues that because Plaintiff applied for benefits after March 27, 2017, the new regulations apply to her case.  (*Id.* (citations omitted)). Defendant contends that "[t]he Commissioner acted within his broad rulemaking authority when revising the regulations, and the revised regulations govern even though they differ from prior standards."  (*Id.*).  Defendant explains the significance of the changes, including that the revised regulations redefined how evidence is categorized, redefined the term "medical opinion," and altered how the agency considers medical opinions and prior administrative medical findings.  (*Id.* at 25-29 (citations omitted)).  In his explanation, Defendant essentially asserts that the regulations did not retain the treating source rule and explains the new standard. (*See id.* at 27-29 (citations omitted)).

Turning to the specifics of the case, Defendant contends that the ALJ "thoroughly evaluated the medical evidence of record and determined Plaintiff retained the RFC to perform light work with additional limitations."  (*Id.* at 29 (citing Tr. at 18-25)).  Defendant maintains that in so doing, the ALJ "specifically considered the opinions from [APNP] Sojdak and Dr. Chang and provided reasons for findings these opinions were not persuasive based on the supportability and consistency with the objective evidence from the relevant period."  (*Id.* at 30 (citing Tr. at 20-25, 641-46, 905-11; 20 C.F.R. § 404.1520c(c)(1), (2))).  Additionally, Defendant argues that Plaintiff's reliance on cases decided under the prior regulations is inappropriate because the new regulations establish new procedures, including the removal of:  (1) the treating source rule; (2) the requirement to defer to

any opinion; (3) and the requirement to give a specific weight to each opinion.  (*See id.* (20 C.F.R. § 404.1520c(a)-(c))).

Defendant also contends that the ALJ did not substitute his lay opinion for APNP Sojdak's and Dr. Chang's opinions but rather evaluated the opinions in a manner consistent with the regulations, finding them to be not persuasive.  (*Id.* (citing Tr. at 20-25; 20 C.F.R. § 404.1520c(a)-(c))).  Accordingly, Defendant argues that "the ALJ properly evaluated the medical opinions and objective evidence from the relevant period under the new regulations."  (*Id.*).

The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff protectively filed her claim on December 27, 2017, (Tr. at 16), the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the same factors in the consideration of opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. § 404.1520c(a).

In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

At present, a question remains as to whether the Social Security Administration's 2017 revised regulations override the Eleventh Circuit's treating source rule. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *6 (M.D. Fla. Aug. 5, 2021) ("Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the 'good cause' standard are no longer good law, particularly given that *Winschel* [*v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011)] remains binding Eleventh Circuit precedent."), *with Douglas v. Saul*, No. 4:20-cv-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021) ("[Based on the application of *Chevron* and *Brand X,*] the court will apply the 2017 regulations – not the treating physician rule – to the ALJ's evaluation of the opinion evidence."), *and Stemple v. Kijakazi*, No. 1:20-cv-485, 2021 WL 4060411, at *6 (N.D. Ohio Sept. 7, 2021) (collecting cases nationwide in support of the same proposition).

Here, Plaintiff appears to argue that the treating physician rule applies even under the new regulations. (*See* Doc. 19 at 23). Defendant disagrees. (*See id.* at 27-28). Nonetheless, because the result remains the same under both standards, the Court need not resolve the conflict.

First, under the revised regulations, as to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered. *See* 20 C.F.R. § 404.1520c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. § 404.1520c(b)(1).

Moreover, because supportability and consistency are the most important factors, the ALJ must explain how he considered these factors. 20 C.F.R. § 404.1520c(b)(2). It is generally within the ALJ's discretion, however, whether to explain how he considered the remaining factors. *Id.* Nevertheless, if the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate how he considered the remaining factors found in paragraphs (c)(3) through (c)(5). 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6,

2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Second, under Eleventh Circuit precedent, the ALJ must show "good cause" to discredit the opinion of a treating physician. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted) (citing *Phillips*, 357 F.3d at 1241).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

Here, Plaintiff challenges the ALJ's findings that APNP Sojdak's and Dr. Chang's opinions were not persuasive.  (Doc. 19 at 19-25).  To assess whether these findings are supported by substantial evidence, the Undersigned first considers (1) how the ALJ determined the persuasiveness of APNP Sojdak's opinions, and (2) whether good cause exists to discredit the opinions.  Then the Undersigned considers how the ALJ determined the persuasiveness of Dr. Chang's opinion.

### 1.    Whether the ALJ Erred in His Evaluation of APNP Sojdak's opinions.

In her first opinion, APNP Sojdak utilized a checklist form to find essentially that Plaintiff satisfied Listing 12.04 because Plaintiff had five or more characteristics

of depressive disorder and an extreme limitation her ability to concentrate, persist, or maintain pace.  (Tr. at 905-06).  Likewise, APNP Sojdak utilized a similar form to find that Plaintiff satisfied Listing 12.06 because Plaintiff had three or more characteristics of anxiety disorder, an extreme limitation her ability to concentrate, persist, or maintain pace, and as a marked limitation in two other areas of mental functioning.  (*Id.* at 908).

In evaluating the persuasiveness of this opinion, the ALJ noted that it "does not cite to specific clinical or diagnostic evaluations or abnormalities to support the marked to extreme limitations."  (*See* Tr. at 24).  Additionally, the ALJ noted that whether a Plaintiff meets the requirements of a listing "is a judgment reserved to the Commissioner."  (*Id.*).  The Undersigned considers each reason to find the opinions unpersuasive individually below.

First, the ALJ found the opinion to be unpersuasive because it did not "cite to specific clinical or diagnostic evaluations or abnormalities to support the marked to extreme limitations."  (*See* Tr. at 24).  Plaintiff appears to challenge this finding given that "citations are not a mandatory part of medical opinions."  (Doc. 19 at 19).  The Undersigned, however, is not persuaded.  Even assuming Plaintiff is correct in that citations are not mandatory, the ALJ's finding is not inconsistent with the new regulations.  Rather, as noted above, an ALJ must consider the supportability and consistency of any opinion.  *See* 20 C.F.R. § 404.1520c(b)(2).  Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical

14

source's opinion and other evidence within the record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

In light of these definitions, the Undersigned is satisfied that the ALJ implicitly considered the supportability and consistency of the opinion.  (*See* Tr. at 24).  By highlighting that ANPN Sojdak did not support her opinion with clinical or diagnostic evaluations or abnormalities, the ALJ essentially found that the opinion is neither internally supported by ANPN Sojdak's own findings nor overtly consistent with other evidence in the record.  (*See id.*).  In other words, while the ALJ may not have specifically used the words "supportability" or "consistency," the ALJ's assessment of the persuasiveness of APNP Sojdak's opinion was based on those factors.  *Cook*, 2021 WL 1565832, at *5, *report and recommendation adopted*, 2021 WL 1565162 ("While [the ALJ] may not have used the words 'supportability' and 'consistency,' the ALJ's discussion of [the physician's] opinions and findings regarding the record was based on those factors."); *see also Pena v. Comm'r of Soc. Sec.*, No. 2:20-cv-343-FtM-SPC-MRM, 2021 WL 3116130, at *8 (M.D. Fla. July 7, 2021), *report and recommendation adopted sub nom. Pena v. Comm'r of Soc. Sec.*, No. 2:20-cv-343-FtM-SPC-MRM, 2021 WL 3111640 (M.D. Fla. July 22, 2021).  Thus, the Undersigned finds that the ALJ satisfied his obligations under the new regulations. *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

Second, the ALJ noted that "whether [a plaintiff] meets a listed impairment is a judgment reserved to the Commissioner."  (Tr. at 24).  The Undersigned finds no error in this assessment.  As the ALJ states, the decision as to whether Plaintiff met a

Listing was reserved to the Commissioner.  *See Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 542 (11th Cir. 2014) (noting that whether a claimant meets a listing is a decision reserved to the Commissioner).  Thus, the ALJ was not required to consider an opinion on this issue.  *See Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 903-04 (11th Cir. 2019) (concluding that the ALJ was not required to consider an opinion on an issue reserved to the Commissioner); *see also Rios v. Comm'r of Soc. Sec.*, No. 6:19-cv-595-Orl-LRH, 2020 WL 5369082, at *5 (M.D. Fla. Sept. 8, 2020) (citing *Hernandez*, 761 F. App'x at 903-04 to support the proposition that the ALJ did not err in finding two opinions unpersuasive because the opinions were on issues reserved to the Commissioner).

Moreover, while SSR 96-5p governed how an ALJ should consider and articulate his or her consideration of a medical source's opinion on issues reserved to the Commissioner, *see* SSR 96-5p, 1996 WL 374183, it does not apply to claims filed on or after March 27, 2017, *see Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, 2017 WL 3928298 (SSA Mar. 27, 2017).  For claims filed on or after March 27, 2017, "adjudicators will not provide any articulation about their consideration of [medical source's opinion on an issue reserved to the Commissioner] because it is inherently neither valuable nor persuasive to [the SSA]."  *Id.*  Because Plaintiff's claim was filed after March 27, 2021, (*see* Tr. at 16), the Undersigned finds that the ALJ was not required to articulate his consideration of the opinions, *see Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, 2017 WL 3928298.  Thus, the Undersigned finds that

the ALJ did not err in finding the opinion unpersuasive on this basis. *See Rios*, 2020 WL 5369082, at *5.

Nevertheless, even assuming *arguendo* that either SSR 96-5p or Eleventh Circuit precedent pre-dating the new regulations applies to Plaintiff's case, the Undersigned's analysis would not change. SSR 96-5p limits the effect of the treating source rule when the opinion speaks to an issue reserved to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."); *see also Carlson v. Acting Comm'r of Soc. Sec. Admin.*, No. 8:17-cv-2891-T-MCR, 2019 WL 1275096, at *6 (M.D. Fla. Mar. 20, 2019) (finding that the ALJ was not required to give a treating source's opinion special significance because it was an opinion on an issue reserve to the Commissioner). However, the ALJ may not ignore the opinion entirely. *See* SSR 96-5p, 1996 WL 374183, at *2.

Here, the ALJ complied with SSR 96-5p. (*See* Tr. at 24); *see also* SSR 96-5p, 1996 WL 374183, at *2. Specifically, the ALJ considered the opinion but found it unpersuasive. (*See* Tr. at 24). As discussed above, the Undersigned finds no error with the ALJ's evaluation of the persuasiveness of this opinion based on the supportability and consistency factors. Thus, APNP Sojdak's status as a treating source physician does not affect the ALJ's analysis of this opinion. *See* SSR 96-5p, 1996 WL 374183, at *2; *Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, 2017 WL 3928298; *Rios*, 2020 WL 5369082, at *5.

In sum, the Undersigned finds that the ALJ did not err in finding this opinion unpersuasive because (1) the ALJ implicitly analyzed the supportability and consistency of the opinion and (2) the ALJ was not required to consider statements on issues reserved to the Commissioner.

In her second opinion, APNP Sojdak utilized checklist forms to opine that Plaintiff had marked to constant limitations in her ability to:  (1) "respond appropriately to changes in the work setting;" (2) "travel in unfamiliar places or use public transportation;" (3) "set realistic goals or make plans independently of others;" (4) "remember locations and work-like procedures;" (5) "understand and remember detailed instructions;" (6) "carry out detailed instructions;" (7) "maintain attention and concertation for extended periods of time;" (8) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" (9) "sustain an ordinary routine without special supervision;" (10) "work in coordination with or proximity to others without being distracted by them;" (11) "make simple work-related decisions;" (12) "complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;" and (13) "accept instructions and respond appropriately to criticism from supervisions."  (Tr. at 908-09).

In evaluating the persuasiveness of this opinion, the ALJ highlighted that it was a handwritten response to a preformatted checklist questionnaire and did not contain analysis or otherwise refer to specific treatment notes that substantiate the

limitations. (Tr. at 24). Additionally, the ALJ found that the opined limitations were contradicted by the claimant's lack of emergency or inpatient care and the observations of treatment providers. (*Id.*).

As to the ALJ's notation that the opinion is merely a handwritten response to a preformatted checklist questionnaire and neither contains any analysis nor refers to specific treatment notes, (*see id.* at 24), the Undersigned finds no error. This Court has found that an ALJ does not err by finding unpersuasive an opinion on forms in which a medical professional simply checks boxes and circles responses with little to no explanation because they have little probative value. *See Simon v. Kijakazi*, No. 8:20-cv-1650-SPF, 2021 WL 4237618, at *6 (M.D. Fla. Sept. 17, 2021) (citing *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009)). Here, due to the limited probative value of the checklist questionnaire opinion, (*see* Tr. at 909-10), the Undersigned finds that the ALJ did not err in relying on this to find the opinion unpersuasive. *See Simon*, 2021 WL 4237618, at *6 (citing *Hammersley*, 2009 WL 3053707, at *6). Moreover, the ALJ's acknowledgment that the opinion is merely a checklist and includes no analysis or reference to specific treatment notes implicitly analyzed whether the opinion is internally supported by the provider's own findings or otherwise consistent with the remainder of the record. *See id.*; *see also Cook*, 2021 WL 1565832, at *5, *report and recommendation adopted*, 2021 WL 1565162; *Pena*, 2021 WL 3116130, at *8, *report and recommendation adopted sub nom. Pena v. Comm'r of Soc. Sec.*, 2021 WL 3111640. Thus,

the Undersigned finds that the ALJ considered the persuasiveness of the opinion in light of the supportability and consistency factors.

As to the ALJ's finding that the opined extreme limitations were "contradicted by the claimant's lack of emergency or inpatient care and the observations of treatment providers," (*see* Tr. at 24), the Undersigned again finds no error.  First, the ALJ considered the consistency factor by noting that the extreme opined limitations were inconsistent with Plaintiff's failure to seek either emergent or inpatient care. (*See id.*).  Such a statement speaks directly to whether the opinion is consistent with the evidence of record.  Second, the ALJ addressed the consistency of the opinion with "the observations of treatment providers of only isolated mood abnormalities and intact executive functioning, behavior, attention, and concentration among others."  (*See id.*).  While the ALJ did not explicitly state the findings on which he relied, (*see id.*), the findings are evident considering the ALJ's decision as a whole, (*see id.* at 21-25).  Specifically, the ALJ previously highlighted Plaintiff's clinical evaluations in January and February 2018, in which Plaintiff appeared "in no distress" and had "normal mood [and] affect."  (*Id.* at 22 (citing Tr. at 508-14)).  Additionally, the ALJ noted Plaintiff's clinical evaluation in January 2018, in which Plaintiff appeared "in no distress" and had "unremarkable mood, affect, behavior, judgment, and thought content."  (*Id.*).[2]  Likewise, the ALJ noted that in April 2018,

---

[2]  The ALJ did not cite specific records in support of this finding.  However, given the timeframe and surrounding citations, the ALJ appears to be citing the clinical evaluations dated January 22, 2018.  (*See* Tr. at 589).

Plaintiff "did not appear in acute distress . . . and had normal psychiatric function." (*Id.* (citing Tr. at 618-29)).  The ALJ also cited Dr. Chang's opinion in which Plaintiff "was cooperative and motivated[,] . . . fully oriented[,] and [] able to complete single and multi-step directives without difficulty."  (*Id.* at 22-23; *see also* Tr. at 644).  The ALJ further noted Dr. Chang's findings that Plaintiff's "thought content and thought processes were unremarkable[,] . . . mood and affect were mild to moderately anxious[, h]er intellectual ability was estimated to be in the average range[, h]er attention and concentration were within normal limits[, and h]er judgment and insight were intact."  (*Id.* (citing Tr. at 644-45)).  Finally, the ALJ highlighted that in August 2018, Plaintiff "had a normal mood, affect, behavior, and judgment."  (*Id.* at 23 (citing Tr. at 732-33)).  Each statement stands in contrast to ANPN Sojdak's opined extreme limitations.  (*See id.* at 909-10).

In light of the opinion as a whole, the Undersigned finds that substantial evidence supports the ALJ's finding that ANPN Sojdak's opinion was inconsistent with the evidence of record and internally unsupported.  (*See id.* at 24).  To that end, the Undersigned finds that the ALJ did not err in broadly referencing the general findings that he determined to be inconsistent with the opinion because the ALJ had thoroughly discussed the findings of Plaintiff's treating providers earlier in the same decision.  *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  Indeed, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision' enables the district court 'to conclude that

the ALJ considered [the claimant's] medical condition as a whole.'"  *See id.*
(alteration in original).  Likewise, while the ALJ did not properly or explicitly use the
words "supportability" or "consistency," a review of the decision shows that the
ALJ's persuasiveness finding was based on those factors.  (*See* Tr. at 24); *see also Cook*,
2021 WL 1565832, at *5, *report and recommendation adopted*, 2021 WL 1565162; *Pena*,
2021 WL 3116130, at *8, *report and recommendation adopted sub nom. Pena v. Comm'r of
Soc. Sec.*, 2021 WL 3111640.  Thus, the Undersigned finds that the ALJ properly
assessed the persuasiveness of ANPN Sojdak's second opinion.  (*See* Tr. at 24; *see also*
Tr. at 21-25).

  As for Plaintiff's broad assertion that the ALJ erred in assessing ANPN
Sojdak's opinions based on their inconsistency with findings by medical
professionals who focus on physical issues, (Doc. 19 at 19), the Undersigned is not
persuaded.  First, Plaintiff cites no legal authority to support her contention that the
ALJ cannot consider the consistency of an opinion by a mental health specialist with
the objective psychiatric findings of a non-mental health specialist.  (*See id.*).  Second,
while specialty is one factor that the ALJ may consider in assessing the
persuasiveness of an opinion, supportability and consistency are more important.  20
C.F.R. § 404.1520c(b).  Third, the ALJ did not rely exclusively on the objective
psychiatric findings of the non-mental health specialists.  (*See* Tr. at 24).  Rather, the
ALJ found ANPN Sojdak's opinions to be unsupported by and inconsistent with the
evidence of record as a whole, including, but not limited to the observations of
Plaintiff's other providers.  (*Id.*).  In so finding, the ALJ also considered the

inconsistency between the opinion and Plaintiff's failure to seek emergent or inpatient care as well as the lack of supportability of ANPN Sojdak's own objective findings and the unpersuasive nature of checklist forms.  (*See id.*).  Thus, even if the ALJ had erred, the Undersigned finds that the error would be harmless given that the ALJ found that the opinions unpersuasive for other reasons as well.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

In sum, the Undersigned finds that the ALJ comprehensively analyzed the supportability and consistency of ANPN Sojdak's opinions when assessing their persuasiveness as required by 20 C.F.R. § 404.1520c.  Additionally, the Undersigned finds that the ALJ's determination of the persuasiveness of ANPN Sojdak's opinions is supported by substantial evidence within the record.  Further, even considering ANPN Sojdak's status as a treating physician, the ALJ clearly articulated good cause for discrediting ANPN Sojdak's opinions when the ALJ showed that the opinions were inconsistent with the other evidence of record, including Plaintiff's failure to seek emergent or inpatient care, and internally unsupported.

### 2.   Whether the ALJ Erred in His Evaluation of Dr. Chang's Opinion.

Dr. Chang diagnosed Plaintiff with "[u]nspecified anxiety disorder," "[o]ther specified depressive disorder," and "[b]ack pain, spinal stenosis."  (Tr. at 645).  Dr. Chang also noted that Plaintiff presented "with pressured speech that is also interspersed with word finding problems" and that "[h]er anxiety is moderate to

severe." (*Id.*).  Dr. Chang recommended that Plaintiff undergo a "memory assessment given evidence and report of memory impairment," "continue with psychiatric monitoring," and "receive individual therapy to monitor mood and assist with development of coping strategies and cognitive techniques in managing anxiety." (*Id.* at 645-46).  Finally, Dr. Chang opined that Plaintiff "might benefit from assistance in managing finances due to psychiatric instability." (*Id.* at 646).  Importantly, in his decision, the ALJ thoroughly summarized Dr. Chang's treatment notes, including how Plaintiff presented at the appointment. (*Id.* at 22-23 (citing Tr. at 640-46)).

Having summarized the treatment findings and opinions, the ALJ found Dr. Chang's opinion unpersuasive because it was:  (1) "based on a single examination;" (2) "not consistent with the observations of other providers during 2018;" (3) internally unsupported; and (4) based on Plaintiff's subjective reports rather than clinical observations. (*Id.* at 25 (citing Tr. at 640-46)).  Because an ALJ must always consider supportability and consistency, the Undersigned first considers whether the ALJ properly considered those factors.

As to the ALJ's evaluation of consistency and supportability, the Undersigned finds no error.  First, the ALJ found that the opinion was "not consistent with the observations of other providers during 2018 which showed a normal mood and

affect." (*Id.*). The Undersigned finds no error with this analysis.[3] While the ALJ did not explicitly state the findings on which he relied, (*see id.*), the findings are evident in light of the ALJ's decision as a whole, (*see id.* at 21-25). Specifically, the ALJ previously cited Plaintiff's clinical evaluation in January 2018, in which Plaintiff had an "unremarkable mood [and] affect." (*Id.* at 22).[4] Likewise, the ALJ noted that in April 2018, Plaintiff "did not appear in acute distress . . . and had normal psychiatric function." (*Id.* (citing Tr. at 618-29)). The ALJ also noted that in August 2018, Plaintiff "had a normal mood [and] affect." (*Id.* at 23 (citing Tr. at 732-33)). Because the ALJ had thoroughly discussed the findings of Plaintiff's treating providers earlier in the same decision, the Undersigned finds that the ALJ did not err in broadly referencing the general findings. *See Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Second, the ALJ found Dr. Chang's opinions to be unsupported by[5] her own observations. (*Id.* at 25). In so doing, the ALJ explicitly highlighted that Dr. Chang

---

[3] For the reasons addressed above, the Undersigned finds Plaintiff's contention that the ALJ erred in considering the consistency between Dr. Chang's opinion with the objective psychiatric findings of a non-mental health specialist unavailing.

[4] The ALJ did not cite specific records in support of this finding. However, given the timeframe and surrounding citations, the ALJ appears to be citing to the clinical evaluations dated on January 22, 2018. (*See* Tr. at 589).

[5] The ALJ actually found the opinions to be "not consistent with" Dr. Chang's own observations. (Tr. at 25). As defined in the new regulations, however, a determination of whether a medical source has articulated support for the medical

observed that Plaintiff showed "intact orientation, attention, thought content, thought processes, executive functioning, intellect, concentration, judgment, and insight." (*Id.* (citing Tr. at 640-46)).  While the ALJ did not re-state his summary of Dr. Chang's findings here, the ALJ had previously summarized them. (*See id.* at 22-23).  Specifically, the ALJ cited Dr. Chang's observations that Plaintiff "was cooperative and motivated[,] . . . fully oriented[,] and [] able to complete single and multi-step directives without difficulty." (*Id.* at 22-23).  The ALJ also cited Dr. Chang's observations that Plaintiff's "thought content and thought processes were unremarkable[,] . . . mood and affect were mild to moderately anxious[, h]er intellectual ability was estimated to be in the average range[, h]er attention and concentration were within normal limits[, and h]er judgment and insight were intact." (*Id.* (citing Tr. at 644-45)).

In light of the opinion as a whole, the Undersigned finds that substantial evidence supports the ALJ's finding that Dr. Chang's opinion was inconsistent with the evidence of record from 2018. (*See id.* at 25).  As discussed thoroughly above, it is clear to the Undersigned what evidence the ALJ found to be inconsistent with or

---

source's own opinion, is a question of supportability rather than consistency.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  The Undersigned, therefore, construes the ALJ's findings related to the "inconsistency" between Dr. Chang's opinion and her own observations as a finding that the opinion is unsupported by Dr. Chang's own observations.  As noted above, the Undersigned finds no issue with the ALJ's failure to use the proper term so long as the ALJ adequately assessed supportability.  *See Cook*, 2021 WL 1565832, at *5, *report and recommendation adopted*, 2021 WL 1565162; *see also*, 2021 WL 3116130, at *8, *report and recommendation adopted sub nom. Pena v. Comm'r of Soc. Sec.*, 2021 WL 3111640.

lacking support for Dr. Chang's opinion.  (*See id*. at 21-25).  Furthermore, the Undersigned finds that the ALJ's citations to Dr. Chang's own observations provide substantial evidence to support the ALJ's implicit finding that the opinion is unsupported by Dr. Chang's own records.  (*See id*. at 22-23, 25).  As a result, the Undersigned finds that the ALJ properly assessed the consistency and supportability of Dr. Chang's opinion.

The Undersigned next addresses the ALJ's first proffered reason for finding the opinion unpersuasive—*i.e.*, that the opinion was based on a single examination. (*Id.*).  In noting that the opinion was based on a single examination, the ALJ essentially considered the length of Dr. Chang's relationship with Plaintiff.  (*See id.*). As noted above, so long as the ALJ also analyzes the supportability and consistency factors, the ALJ may also consider other factors.  *See* 20 C.F.R. § 404.1520c(c).  One such factor is the length of the relationship between the physician and the claimant. *Id.*

Here, having considered the length of the relationship between Dr. Chang and Plaintiff, the ALJ continued to analyze the supportability and consistency of the opinion.  (*See* Tr. at 25).  Because the ALJ also assessed the supportability and consistency factors, the Undersigned finds that the ALJ did not err in considering the length of the relationship – a factor he is expressly permitted to consider.  *See* 20 C.F.R. § 404.1520c(c).

Finally, the Undersigned considers the ALJ's last reason for finding the opinion unpersuasive—*i.e.*, that "the opinion appear[ed] heavily based on the

claimant's subjective reports rather than clinical observations." (*Id.* (citing Tr. at 640-46)). Whereas this statement does not expressly speak to any of the first four factors, the Undersigned finds that ALJ did not err in considering it. Rather, under the new regulations, an ALJ may consider "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," so long as the ALJ also considers the supportability and consistency factors. 20 C.F.R. § 404.1520c(c). Because the ALJ also considered the supportability and consistency of the opinion, the Undersigned finds that the ALJ did not err in considering whether the opinion was based on Plaintiff's subjective reports rather than clinical observations. *See* 20 C.F.R. § 404.1520c(c).

In sum, the Undersigned finds that the ALJ did not err in assessing the persuasiveness of either ANPN Sojdak's or Dr. Chang's opinions. Because the Undersigned finds no error, the Undersigned likewise finds that the ALJ did not erroneously substitute his opinion for that of the ALJ, as Plaintiff asserts. (*See* Doc. 19 at 19). Rather, the ALJ properly considered and assessed the persuasiveness of the opinions in the manner required.

### B. Whether the ALJ Erred in Finding Plaintiff Could Perform Work with an SVP 2.

Next, Plaintiff argues that "[t]he ALJ erred in finding Plaintiff could perform work at [specific vocational preparation ("SVP")] level 2 inasmuch as the [SSA] twice informed Plaintiff that she could perform other work that requires only a very short on-the-job training period which is equivalent to SVP level 1." (Doc. 19 at 31

(emphasis omitted)).[6]  Plaintiff notes that an SVP 2 "requires training of anything beyond a short demonstration up to and including one month." (*Id.*).  Thus, Plaintiff maintains that "in failing to cite any jobs that comply with the [SSA's] statement that Plaintiff could perform work that requires only a short, on-the-job training period equating to SVP 1," the ALJ issued a decision unsupported by substantial evidence. (*Id.* at 32).

    In response, Defendant argues that "[e]ven if prior agency determinations indicated Plaintiff could perform work that requires 'only a very short, on-the-job training period,'" the ALJ was not bound by these determinations because Plaintiff appealed them and requested a hearing by an ALJ.  (*Id.* at 32 (citing Tr. at 107, 111, 120-21, 122-27, 145-46)).  Further, Defendant essentially contends that the ALJ properly determined that Plaintiff could perform jobs with an SVP of two and, as such, did not include a limitation to jobs with an SVP of one in the hypothetical posed to the VE.  (*See id.*).  Defendant also highlights that "Plaintiff was represented at the administrative hearing and her counsel cross-examined the VE, but did not object or request any clarification for jobs with an SVP of 1."  (*Id.* (citing Tr. at 67-71)).

---

[6]  An occupation's SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles* (DOT) (4th ed., rev. 1991), Appendix C:  Components of the Definition Trailer, § II, SVP.

Upon review, the Undersigned finds Plaintiff's argument meritless.  In support, Plaintiff relies on the SSA's determinations at the initial and reconsideration levels.  (*Id.* at 31-32 (citing Tr. at 107, 111)).  Yet, Plaintiff fails to cite to any legal authority to support her position that the ALJ is bound by these earlier findings.  (*See id.*).[7]  Likewise, Plaintiff fails to cite any medical evidence supporting the need for a limitation to jobs with an SVP of one.  (*See id.*).

More importantly, the pertinent regulations do not support Plaintiff's position.  Rather, under the regulations, the SSA's "initial determination is binding unless [the claimant] request[s] a reconsideration" or the SSA revises the determination.  *See* 20 C.F.R. § 404.905.  Likewise, the SSA's reconsideration decision is binding unless, *inter alia*, the claimant requests a hearing before an ALJ and a decision is made.  *See* 20 C.F.R. § 404.921.  If a claimant requests an administrative hearing, the ALJ "must base [his or her] decision on the preponderance of the evidence offered at the hearing or otherwise included in the record."  20 C.F.R. § 404.953.  Relying on these regulations, the Court has previously rejected an identical argument.  *See Hedges v. Comm'r of Soc. Sec.*, No. 2:19-cv-833-FtM-MAP, 2021 WL 1186836, at *9 (M.D. Fla. Mar. 30, 2021).

Here, Plaintiff appealed the SSA's initial determination as well as the reconsideration determination, requesting a hearing before the ALJ.  (Tr. at 108-10,

---

[7]  The only legal authority cited by Plaintiff in this section is a decision from the Northern District of Florida, included to explain the difference between an SVP of one and an SVP of two.  (*See* Doc. 19 at 31-32 (citation omitted)).

120-21).  The ALJ then held an administrative hearing and rendered a decision.  (*Id.*

at 13-31, 38-71).  Thus, both the initial and reconsideration determinations lost any

binding effect on Plaintiff.  *See* 20 C.F.R. § 404.921, 404.953.  As such, the ALJ was

not bound by the prior findings or determinations.  *See id.*; *see also* 20 C.F.R. §

404.953.

Because the ALJ was not bound by the prior agency determinations and

because Plaintiff has not otherwise shown that this limitation is supported by the

medical evidence, the Undersigned finds that remand is not warranted on this

ground.  *See Hedges*, 2021 WL 1186836, at *9.

### C.    Whether the ALJ Improperly Circumvented the Medical-Vocational Guidelines ("GRIDS").

Next, Plaintiff argues that "[t]he ALJ circumvented the medical-vocational

guidelines ("grids") by finding Plaintiff could not perform the full range of light work

yet failing to apply the grid rule (201.14) pertaining to sedentary work."  (Doc. 19 at

33 (emphasis omitted)).  In support Plaintiff argues that because the ALJ found that

Plaintiff could perform less than a full range of light work and the VE testified that

Plaintiff could not perform her past relevant work, Plaintiff would be limited to

sedentary jobs and would "grid out" under medical-vocational guideline 201.14.  (*Id.*

(citations omitted)).  Thus, Plaintiff argues that the ALJ erred "[i]n finding that

Plaintiff could not perform the full range of light work yet failing to apply the grid

rule pertaining to sedentary work."  (*Id.* at 34).

In response, Defendant argues that the ALJ's RFC finding is supported by substantial evidence and that "[t]he Grids do not apply to the instant case because Plaintiff had significant non-exertional limitations as noted in the ALJ's RFC determination." (*Id.* at 34 (citations omitted)).  Further, Defendant contends that "Plaintiff's argument about the Grid rules for sedentary work is speculative and irrelevant." (*Id.*).  Finally, Defendant maintains that the ALJ "properly posed a hypothetical question to a VE that included Plaintiff's exertional and non-exertional limitations" rather than relying on the grids.  (*Id.* at 34-35 (citing Tr. at 21-27)).

There are two avenues by which the ALJ may determine whether the plaintiff has the ability to adjust to work in the national economy:  either (1) by using the Medical–Vocational Guidelines ("grids") or (2) by obtaining the testimony of a vocational expert.  *Phillips v. Barnhart,* 357 F.3d 1232, 1239-40 (11th Cir. 2004).  An ALJ cannot rely exclusively on grids when Plaintiff is unable to perform a full range of work at a given residual functional level or when a Plaintiff has non-exertional impairments that "significantly limit [her] basic work skills."  *Id.* at 1242.  "Significantly limit basic work skills" means that the limitations prohibit a plaintiff from performing a "wide range" of work at a given level.  *Id.* at 1243.  If Plaintiff cannot perform a full range of work at a given level or has non-exertional impairments that prohibit a wide range of work at a given level, the ALJ may use the grids as a framework, but must also introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national

economy that Plaintiff can perform. *Wolfe v. Chater,* 86 F.3d 1072, 1077-78 (11th Cir. 1996).

Here, the Undersigned finds Grid 201.14 inapplicable. (*See* Tr. at 21). As Plaintiff correctly points out, she has certain exertional limitations that prevent her from doing a full range of light work. (*See* Tr. at 21). In view of these limitations, the ALJ found that Plaintiff could perform "*less than* the full range of light work" and included specific limitations. (*Id.* (emphasis added)).

Importantly, certain of these limitations involve activities in excess of sedentary work. (*See id.*). For example, the ALJ determined that Plaintiff could "lift and carry 20 pounds occasionally and 10 pounds frequently," (*id.*), which is greater than that permitted under sedentary work, *see* 20 C.F.R. § 404.1567(a) (stating sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools")*.* In fact, Plaintiff's ability to lift and carry 20 pounds occasionally and 10 pounds frequently is more consistent with light work. *See* 20 C.F.R. § 404.1567(b) (stating light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). Likewise, while Plaintiff cannot stand for the entirety of a workday, her RFC permits her to stand/walk for up to six hours in an eight-hour workday. (*See* Tr. at 21). This is, again, in excess of sedentary work. *See* SSR 83-10 (stating standing or walking in sedentary work "should generally total no more than about 2 hours of an 8-hour workday").

Because Plaintiff's RFC includes work that exceeds the sedentary work level but does not meet the light work level, Plaintiff's exertional capacity clearly fell between light work and sedentary work.  As such, the ALJ was precluded from relying exclusively on the grids.  *See Prince v. Colvin*, No. 5:12-cv-751-LSC, 2013 WL 754859, at *6 (N.D. Ala. Feb. 27, 2013).  Specifically, under SSR 83-12, when a plaintiff's exertional limitations are "'somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work,' . . . the appropriate course of action is to obtain assistance from a [VE] to determine the remaining occupational base." *Id.* (quoting SSR 83-12).  Here, the ALJ did just that.  (*See* Tr. at 63-68).  Because the ALJ properly obtained a VE's assistance to determine Plaintiff's occupational base, the Undersigned finds that the ALJ did not err.

Additionally, the Undersigned is unpersuaded by the argument that Plaintiff should have been limited to only sedentary work.  As noted above, certain limitations exceeded what is permitted in the sedentary level.  (*See* Tr. at 21).  This Court has previously found that even when a plaintiff is limited to walking or standing for a maximum of two hours out of an eight-hour workday – which is consistent with a sedentary level – the ALJ did not err in limiting the plaintiff to less than full range of light work instead of sedentary work.  *See Brown v. Astrue*, No. 3:08-cv-1066-J-TEM, 2010 WL 1257479, at *3 (M.D. Fla. Mar. 29, 2010).  Here, Plaintiff was found capable of standing for much longer than the two hours permitted under sedentary work.  (*See* Tr. at 21).  Likewise, she was given other limitations in excess of sedentary work.  (*See id.*).  Accordingly, the Undersigned finds that the ALJ did

not err in limiting Plaintiff to "less than the full range of light work" rather than sedentary work.  *See Brown*, 2010 WL 1257479, at *3; *see also Prince*, 2013 WL 754859, at *6.

For these reasons, the Undersigned finds that remand is not warranted on this ground.  *See Prince*, 2013 WL 754859, at *6.

### D.   Whether the ALJ Resolved the Apparent Conflicts Between the VE's Testimony and the DOT.

Plaintiff also contends that the ALJ erred in failing "to resolve apparent inconsistencies between the VE's testimony and the DOT."  (Doc. 19 at 15 (emphasis omitted)).  In support, Plaintiff essentially maintains that there were three apparent conflicts the ALJ failed to resolve.  (*See id.* at 15-16).

First, Plaintiff essentially argues that the VE's testimony that a person with a limitation to only occasional interaction with others could perform the positions of shellfish preparer, account investigator, and routing clerk conflicts with the DOT.  (*See id.* at 15-16).  More particularly, Plaintiff highlights that the position of shellfish preparer requires frequent hearing and talking and that the fifth digit of the account investigator's DOT is 6, "indicating that the primary tasks of the job involve speaking-signalling [sic]."  (*Id.* (citations omitted)).  Plaintiff also maintains that both the shellfish preparer and account investigator positions "require dealing with people beyond giving and receiving instructions."  (*Id.* (citing Docs. 19-2 at 8, 19-3 at 4)).  Further, Plaintiff argues that because routing clerks "usually learn the job under close supervision," the position conflicts with both Plaintiff's limitation on interaction with

supervisors to occasional and the prohibition on requiring more than normal supervision.  (*Id.* (citing Doc. 19-1 at 4)).  Finally, Plaintiff notes that because "[a]ccount investigators must communicate effectively with customers; address customer issues and concerns; help customers resolve merchandising problems and concerns; and participate as a member of a team."  (*Id.* (citing Doc. 19-3 at 1)).  Thus, Plaintiff maintains that "[e]ach of these three jobs . . . require more than occasional interaction with supervisors, coworkers, and the public."  (*Id.* at 15-16).

Second, Plaintiff essentially argues that an apparent conflict exists between Plaintiff's sit/stand limitation, permitting her to alternate between sitting and standing at a maximum of thirty-minute intervals, and the position of shellfish preparer, which requires a person to stand for hours at a time.  (*See id.* at 16 (citing Doc. 19-2 at 9)).

Third, Plaintiff essentially contends that an apparent conflict exists between Plaintiff's limitation to simple tasks and the position of account investigators, which requires a GED reasoning level of four.  (*See id.* (citing Doc. 19-3 at 2)).

Plaintiff essentially argues that the ALJ failed to identify and resolve these conflicts as required by SSR 00-4p and the Eleventh Circuit's holding in *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018).  (*See* Doc. 19 at 16-17 (citations omitted)).  In support, Plaintiff notes that "the ALJ did not ask the VE whether her testimony was consistent with the DOT" and only asked for the VE's source of her testimony as to absenteeism and time off task.  (*Id.* at 16).  As a result,

Plaintiff argues that the ALJ issued a decision unsupported by substantial evidence. (*Id.* at 17).

In response, Defendant argues that although the burden of proof "shifted to the Commissioner to provide that Plaintiff could perform other work which existed in the national economy," the burden shifted back to Plaintiff to prove that she was unable to perform the jobs suggested by the Commissioner. (*Id.* at 17-18 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987))). Additionally, Defendant appears to argue that because the ALJ posed a hypothetical to the VE and relied on the VE's testimony to determine Plaintiff was not disabled, the ALJ did not err. (*See id.* at 18 (citations omitted)).

As for Plaintiff's specific arguments, Defendant concedes that the position of account investigator exceeds Plaintiff's limitations. (*Id.*). Nevertheless, Defendant argues that the remaining positions of routing clerk and shellfish preparer do not present an apparent conflict. (*Id.*). Defendant argues that these jobs exist in a significant number in the national economy. (*Id.*).

Moreover, Defendant specifically addresses the position of routing clerk, highlighting that it has a reasoning level of two, a "'not significant' requirement for work with people other than taking instructions and helping[,] and [] an SVP 2." (*Id.*). Defendant argues that even if only the routing clerk position were available, it exists in significant numbers of jobs in the national economy. (*Id.*).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).   "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."  *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004).  An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a VE to determine whether there are jobs that exist in the national economy that a claimant can perform.  *Winschel*, 631 F.3d at 1180.  If the ALJ decides to use a VE, for the VE's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

In addition, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it.  The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018).  Thus, an ALJ must ask the VE whether a conflict between his or her testimony and the DOT exists and must ask for an explanation if there appears to be a conflict.  *Id.* at 1363.  Moreover, whenever a conflict is apparent, the ALJ must ask the VE about it.  *Id.*  An apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony.  At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id.* at 1365.  "During or

after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363. This is an independent obligation of the hearing examiner. *Id.*

As an initial matter, the Undersigned is unpersuaded that the ALJ's error in failing to resolve any conflict as to the account investigator and/or shellfish preparer positions is harmless because Plaintiff could still work as a routing clerk, a job which exists in significant numbers in the national economy. (*See* Doc. 19 at 18). The Eleventh Circuit recently rejected a similar argument in *Viverette v. Commissioner of Social Security*, 13 F.4th 1309 (11th Cir. 2021). In *Viverette*, the trial court held that any error by the ALJ in failing to resolve an apparent conflict between the DOT and the VE's testimony was harmless. *See id.* at 1317. In support, the trial court noted that there were two other jobs that existed in the national economy that the plaintiff could perform. *Viverette v. Comm'r of Soc. Sec.*, No. 8:18-cv-2773-J-PDB, 2020 WL 1329992, at *10 n.12 (M.D. Fla. Mar. 23, 2020), *rev'd and remanded,* 13 F.4th 1309 (11th Cir. 2021).

In reversing the trial court's decision, the Eleventh Circuit found that the ALJ's error in failing to resolve the conflict could not be deemed harmless. *See Viverette*, 13 F.4th at 1317-19. More particularly, the Eleventh Circuit observed that while "the VE testified that there are 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally," the ALJ referenced the testimony collectively when concluding that work existed in significant numbers in the national

economy that the plaintiff could perform.  *Id.* at 1318.  The Eleventh Circuit specifically highlighted that the ALJ made no findings as to how many jobs were available for each position individually or whether the number of the remaining two jobs, either separately or collectively, constituted a significant number, absent the third.  *Id*.  The Eleventh Circuit also observed that eighty percent of the jobs the ALJ considered were affected by the conflict.  *Id.*

In light of the collective nature of the ALJ's findings, the Eleventh Circuit concluded that remand was necessary.  *Id.* at 1318-19.  In support, the Eleventh Circuit explained that "[w]hether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]."  *Id.* at 1318.  Because the finding involved a question of fact to be determined by the ALJ and given number of the jobs affected the conflict, the Eleventh Circuit concluded that it was "hesitant to make any factual determinations . . . about whether the final assembler or check weigher positions exist in significant numbers in the national economy."  *Id.* at 1318-19.  As a result, the Eleventh Circuit remanded the case to the trial court and instructed that the decision be remanded to the Commissioner for further proceedings.  *Id.* at 1318-19.

Here, as in *Viverette*, the ALJ found that the 163,000 jobs Plaintiff could perform – consisting of routing clerk positions, shellfish preparer positions, account investigator positions – *collectively* exist in significant numbers in the national economy.  (*See* Tr. at 26-27).  The ALJ did not state whether the identified jobs

individually existed in significant numbers.  (*See id*).  Likewise, there is no evidence that the ALJ considered the effect that omitting one or more of the positions would have on his finding.  (*See id.*).

On this record, and in light of the Eleventh Circuit's decision in *Viverette*, the Undersigned cannot find the ALJ's failure to resolve the apparent conflicts harmless. *See Viverette*, 13 F.4th at 1318.  To that end, although the number of jobs affected by the error is significantly less than the number affected in *Viverette*,[8] the Undersigned nevertheless finds that this Court should be "hesitant," as the Eleventh Circuit was, to make a finding of fact as to whether the reduced number of jobs constitutes a significant number.  *See id.*  As the Eleventh Circuit noted, such a finding "is a question of fact to be determined by a judicial officer [i.e., the ALJ]."  *Id.* at 1318. Thus, the Undersigned finds remand appropriate.  *See id*. at 1318-19.

Having reached this conclusion, however, the Undersigned anticipates that Defendant may object to this aspect of the Undersigned's recommendation as it has in another recent case, *Cisneros v. Commissioner of Social Security*, Case No. 2:20-cv-00873-JLB-MRM, on the grounds that the Eleventh Circuit's holding in *Viverette* was fact specific and factually distinguishable.  *See* 2:20-cv-00873-JLB-MRM, Doc. 25 at

---

[8]  Whereas eighty percent of the jobs were affected by the ALJ's error in *Viverette*, *see Viverette*, 13 F.4th at 1318, approximately six percent of the jobs are affected by the ALJ's error here, if both the routing clerk and shellfish preparer positions remain available, (*see* Tr. at 26-27).  If only the routing clerk positions remain available, approximately eighteen percent of the jobs are affected by the ALJ's error.  (*See* Tr. at 26-27).  As discussed thoroughly below, the Undersigned finds that only the routing clerk position could remain available.

4-7.  In support of her objection in *Cisneros*, the Commissioner appears to assert that the Eleventh Circuit rested its "hesitan[cy]" to make a factual finding as to whether the remaining positions exist in significant numbers in the national economy on two grounds:  (1) the fact that eighty percent of the jobs were affected by the ALJ's error in *Viverette* and (2) the number of one of the remaining jobs may have been overstated as a result of the VE's use of the Standard Occupational Classification ("SOC") group code.  *See id.* at 4.

The Undersigned acknowledges the factual distinctions as it relates to the first point but finds remand nonetheless appropriate as discussed above.  However, the Undersigned disagrees with the Commissioner's position as it relates to the second point because it misreads the Eleventh Circuit's decision in *Viverette*.  *See* 13 F.4th at 1319.  While the Eleventh Circuit found that the number of positions for the check weigher position may be overstated as a result of the VE's failure to properly investigate the SOC before relying on it, this was an alternative finding, separate and apart from the holding on which the Undersigned relies.  *See id.*  In other words, having concluded that remand was appropriate in light of the collective nature of ALJ's finding that a significant number of jobs existed that the plaintiff could perform, the Eleventh Circuit nevertheless proceeded to consider the facts of the case under the *assumption* that the ALJ made independent, specific findings about the remaining jobs.  *Id.* at 1318-19.  This is evinced by the plain reading of the decision, in which the Eleventh Circuit began this portion of the analysis, its alternative finding, with the statement: "*[e]ven if* we thought that the ALJ had made specific

findings about the number of final assembler and check weigher jobs available in the national economy, and about whether those numbers were significant, our recent decision in *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020) . . . favor[s] . . . remand." *Id.* at 1319 (emphasis added).  Thus, the plain language of the *Viverette* decision demonstrates that the VE's improper reliance on the SOC was a separate basis to remand the case in the event the ALJ made the initial significant number findings as to each position.  *Id.*  Accordingly, the Undersigned finds unpersuasive any argument that the holding in *Viverette* is distinguishable on this basis.

In light of this, the Undersigned considers all three positions to determine whether there is an unresolved apparent conflict between (1) the VE's testimony and the DOT related to Plaintiff's limitation to occasional interaction with co-workers, supervisors, and the public and to normal supervision, (2) the VE's testimony and the DOT relating to Plaintiff's sit/stand limitation, or (3) the VE's testimony and the DOT related to Plaintiff's limitations to simple tasks could perform positions with reasoning level of four.  (*See* Doc. 19 at 15-16).

### 1.   Whether There Is an Unresolved Apparent Conflict Related to Plaintiff's Limitations to Occasional Interaction and Normal Supervision.

To begin, the Undersigned is unpersuaded by Plaintiff's argument that there is an apparent conflict between the DOT and the VE's testimony that a person Plaintiff's RFC could perform the position of routing clerk.  (*See* Doc. 19 at 15).  As to the argument that the RFC contains a "prohibition on requiring more than normal

supervision," (*see id.*), the Undersigned finds it meritless.  The RFC merely noted that Plaintiff "requires no more than normal supervision," not that she was prohibited to more than normal supervision.  (*See* Tr. at 21).  As to the argument that the VE's testimony conflicts with the limitation to occasional interaction with supervisors, coworkers, and the public given that the position is usually learned under close supervision, (*see* Doc. 19 at 15 (citing Tr. at 19-1 at 4)), the Undersigned is likewise not persuaded.  First, while routing clerks are generally trained under "close supervision," the position has an SVP of 2.  (*See* Doc. 19-1 at 3, 4); *see also* 222.687-022 Routing Clerk, 1991 WL 672133.  An SVP of 2 encompasses "[a]nything beyond [a] short demonstration up to and including 1 month."  *Id.*  Because the routing clerk position has an SVP of 2, the Court finds that the position of routing clerk takes no more than one month to learn.  *Dictionary of Occupational Titles* (DOT) (4th ed., rev. 1991), Appendix C:  Components of the Definition Trailer, § II, SVP; *see also* 222.687-022 Routing Clerk, 1991 WL 672133.  Thus, the amount of time a routing clerk works under close supervision is relatively short.  *See id.*  Second, the DOT indicates that the position has a "not significant" requirement for work with people. *See* 222.687-022 Routing Clerk, 1991 WL 672133.  Specifically, the fifth digit of the DOT code is an 8, indicating that the position does not require significant work with other people, except for "Taking Instructions-Helping."  *Id.*  Third, the DOT states that "[t]alking" and "[h]earing" are "[n]ot [p]resent" in this position.  *Id.*  Upon review of the pertinent DOTs, the Undersigned finds that the conflict would not be

"reasonably ascertainable or evident from a review of the DOT and the VE's testimony" and was, therefore, not apparent.  *See Washington*, 906 F.3d at 1365.

Nonetheless, the Undersigned finds that there is an apparent conflict between the DOT and the VE's testimony that a person with a limitation to occasional interaction with supervisors, coworkers, and the public could perform the positions of account investigator or shellfish preparer.  The DOTs for both positions state that the jobs require "frequent" talking.  (*See* Docs. 19-2 at 8; 19-3 at 4).  SSR 83-10 – which provides the SSA's definitions for common terms – defines "occasionally" as "occurring from very little up to one-third of the time" and "frequent" as "occurring from one-third to two-thirds of the time."  SSR 83-10, 1983 WL 31251.  Based on these definitions, the Undersigned finds that the conflict would be "reasonably ascertainable or evident from a review of the DOT and the VE's testimony" and was, therefore, apparent.  *See Washington*, 906 F.3d at 1365.

This finding is bolstered by a review of the pertinent case law.  Specifically, although the parties did not cite and the Undersigned has not found any final decision by or within the Eleventh Circuit considering whether an apparent conflict exists between the limitation to occasional interaction with supervisors, coworkers, and the public and an occupation requiring frequent talking, jurists outside the Eleventh Circuit have concluded that it does.  *See, e.g.*, *Holt v. Saul*, 416 F. Supp. 3d 1234, 1250 (D. Colo. 2019); *Holdeman v. Saul*, No. 4:18-CV-00916-NKL, 2019 WL 5783733, at *7 (W.D. Mo. Nov. 6, 2019); *Juanashe C. v. Comm'r, Soc. Sec. Admin.*, No. CV ADC-18-2909, 2019 WL 3208682, at *11 (D. Md. July 16, 2019); *Sigala v.*

*Berryhill*, No. CV 17-1126 JHR, 2019 WL 719512, at *5 (D.N.M. Feb. 20, 2019);

*Ford v. Berryhill*, No. 1:16 CV 140 JMB, 2017 WL 3968742, at *10 (E.D. Mo. Sept. 8,

2017).

      Because the Undersigned finds that there was an apparent conflict between the

DOT and the VE's testimony as it relates to Plaintiff's ability to perform the positions

of account investigator and shellfish preparer, the Undersigned finds that the ALJ

was under a duty to resolve the apparent conflict in the manner prescribed in

*Washington.  See* 906 F.3d at 1362-63.  Despite this duty, the ALJ failed to ask the VE

whether her testimony was consistent with the DOT, and, if not, to elicit testimony

as to the basis of her opinion.  (*See* Tr. at 63-68).

      In his opinion, the ALJ found that "the vocational expert's testimony is

consistent with the information contained in the [DOT]."  (*Id.* at 26).[9]  The ALJ's

statement is inaccurate in light of the Undersigned's finding that an apparent conflict

exists between the VE's testimony and the DOT.  Based on this inaccuracy, it is

unclear whether the ALJ identified this apparent conflict.

      To the extent the ALJ may have implicitly identified the conflict and resolved

it by noting that his conclusion is "[b]ased on the testimony of the vocational

expert," (*see id.*), the Undersigned finds such an implicit resolution insufficient

---

[9] In his decision, the ALJ identified an unrelated apparent conflict and specifically resolved it.  (*See* Tr. at 26 ("Vocational testimony as to the effect of being off task on the claimant's occupational base is based on the vocational expert's 35 years of experience and material published by the Department of Labor Wage and Hour division.")).  Neither party attempts to argue that this satisfies the ALJ's obligation to identify and resolve other apparent conflicts.  (*See* Doc. 19 at 15-18).

because it would have been nothing more than a post-hoc assumption. Allowing an ALJ to make such an assumption – even a likely assumption – contravenes the Eleventh Circuit's reasoning in *Washington v. Commissioner of Social Security*. *See Washington*, 906 F.3d at 1361-65. Specifically, following the promulgation of SSR 00-4p, which required the ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts," the Eleventh Circuit imposed specific obligations on the ALJ to resolve such conflicts. *Id.* at 1362 (alteration in original). In so doing, the Eleventh Circuit superseded its holding in *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999), which allowed an ALJ to rely solely on the VE's testimony when the testimony conflicted with the DOT. *Washington*, 906 F.3d at 1361-62.

In sum, the ALJ failed to comply with the requirements of *Washington* – and SSR 00-4p – because the ALJ failed to elicit and obtain a reasonable explanation from the VE. *See id.* at 1362. Rather, the ALJ either wholly failed to identify the apparent conflict or identified it and attempted to resolve it by *assuming* an explanation the ALJ deemed to be reasonable. (*See* Tr. at 26-27). Because the ALJ failed to discharge properly his duty as it applies to this apparent conflict, the Undersigned finds that the ALJ's findings that Plaintiff can perform work as an account investigator or a shellfish preparer are not supported by substantial evidence and remand on this ground is required. *See Washington*, 906 F.3d at 1362.

## 2.   Whether There Is an Unresolved Apparent Conflict Related to Plaintiff's Sit/Stand Limitation.

The Undersigned finds that there is an apparent conflict between the DOT and the VE's testimony that a person permitted to alternate between sitting and standing in a maximum of thirty-minute intervals could perform the shellfish preparer position.  In addition to identifying and resolving any inconsistencies between the VE testimony and the DOT, the ALJ must obtain VE testimony to determine the implications of an unusual limitation of ability to sit or stand.  *See* SSR 83-12 (S.S.A. 1983), 1983 WL 31253.  Despite these obligations, the ALJ failed to ask the VE about any inconsistencies and the basis for the VE's opinion that Plaintiff could perform the work of shellfish preparer despite her limitation that she be permitted to alternate between sitting and standing in a maximum of thirty-minute intervals.  (*See* Tr. at 63-68).

As an initial matter, the Undersigned finds that an apparent conflict can exist between a sit/stand limitation and the DOT.  Defendant makes no attempt to argue otherwise, focusing instead on Plaintiff's arguments related to her supervision and interaction limitations.  (*See* Doc. 19 at 18).  Nevertheless, at least one jurist in this Court has found that there is no conflict between a sit/stand limitation and the DOT, which does not address a sit/stand limitation.  *See e.g.*, *Lewis v. Comm'r of Soc. Sec.*, No. 3:18-cv-411-J-PDB, 2019 WL 4727814, at *6 (M.D. Fla. Sept. 27, 2019).  The same jurist, however, found that the ALJ properly fulfilled his duty because the ALJ noted that the DOT does not address a sit/stand limitation and questioned the VE

on the basis of the VE's testimony.  *See id*.  Accordingly, the Court found that the ALJ "offer[ed] a reasonable explanation for the discrepancy, and detail[ed] in his decision how he has resolved the conflict."  *Id.* (citing *Washington*, 906 F.3d at 1356). In so finding, the Court implicitly concluded that the ALJ must determine the basis of the VE's testimony to resolve any discrepancy.  *See id.*  Based on the Court's reasoning in *Lewis* and Defendant's failure to raise the argument, the Undersigned finds that an apparent conflict can exist between a sit/stand limitation and the DOT.

Moreover, the Undersigned finds that such an apparent conflict exists here. More particularly, the Undersigned finds that there is an apparent conflict between the DOT for the shellfish preparer position and Plaintiff's limitation that she be permitted to alternate between sitting and standing in a maximum of thirty-minute intervals.  *See Washington*, 906 F.3d at 1365 (noting that an apparent conflict is one that apparent conflict is a "conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony").  Specifically, the DOT states that "[w]orkers usually must stand for hours *at a time*." (Doc. 19-2 at 9 (emphasis added)).  Based on the requirement to stand for hours at a time, compared with Plaintiff's limitations to alternate sitting and standing in maximum of thirty-minute intervals, the Undersigned finds that the conflict would be "reasonably ascertainable or evident from a review of the DOT and the VE's testimony" and was, therefore, apparent.  *See Washington*, 906 F.3d at 1365.

Because there was an apparent conflict between the DOT and the VE's testimony, the Undersigned finds that the ALJ was under a duty to resolve the

apparent conflict in the manner prescribed in *Washington*.  *See* 906 F.3d at 1326-63.

However, the ALJ failed to ask the VE whether her testimony – as it relates to this

issue – was consistent with the DOT, and, if not, to elicit testimony as to the basis of

her opinion.  (*See* Tr. at 63-68).

In his opinion, the ALJ found that "the vocational expert's testimony is

consistent with the information contained in the [DOT]."  (*Id.* at 26).[10]  Notably, the

ALJ's statement is inaccurate in light of the Undersigned's finding that an apparent

conflict exists between the VE's testimony and the DOT.  Based on this inaccuracy,

it is unclear whether the ALJ identified this apparent conflict.

To the extent the ALJ may have implicitly identified the conflict and resolved

it by noting that his conclusion is "[b]ased on the testimony of the vocational

expert," (*see id.*), the Undersigned again finds such an implicit resolution insufficient

because it would have been nothing more than a post-hoc assumption.  As noted

above, allowing an ALJ to make such an assumption – even a likely assumption –

contravenes the Eleventh Circuit's reasoning in *Washington*.  *See* 906 F.3d at 1362-65.

Ultimately, the ALJ failed to comply with the requirements of *Washington* –

and SSR 00-4p – because the ALJ failed to elicit and obtain a reasonable explanation

from the VE.  *See id.* at 1362.  Rather, the ALJ either failed to identify the apparent

---

[10]  As noted above, the ALJ identified an unrelated apparent conflict and specifically resolved it.  (*See* Tr. at 26 ("Vocational testimony as to the effect of being off task on the claimant's occupational base is based on the vocational expert's 35 years of experience and material published by the Department of Labor Wage and Hour division.")).  Neither party attempts to argue that this satisfies the ALJ's obligation to identify and resolve other apparent conflicts.  (*See* Doc. 19 at 15-18).

conflict or attempted to resolve it by *assuming* an explanation the ALJ deemed to be reasonable.  (*See* Tr. at 26).  Because the ALJ failed to properly discharge his duty as it applies to this apparent conflict, the Undersigned finds that the ALJ's finding that Plaintiff can perform work as a shellfish preparer is not supported by substantial evidence and remand on this ground is required.  *See Washington*, 906 F.3d at 1362.

### 3.    Whether There Is an Unresolved Apparent Conflict Related to Plaintiff's Limitation to Simple Tasks.

The Undersigned also finds that there is an apparent conflict between the DOT and the VE's testimony that a person limited to "simple tasks" could perform account investigator position, which requires a reasoning level of four.

First, Defendant concedes that the account investigator position exceeds Plaintiff's limitations.  (*See* Doc. 19 at 18).  Second, the Eleventh Circuit has found that an apparent conflict exists between a job with a reasoning level of three and a limitation to simple, routine, repetitive tasks.  *See Viverette*, 13 F.4th at 1317.  Third, when determining that no apparent conflict existed between an RFC that limited the plaintiff's ability to "understand, carry-out, and remember simple instructions" and jobs with a reasoning level of two, the Eleventh Circuit highlighted that the question was "a close question."  *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021).  In doing so, the Eleventh Circuit concluded that the difference between a reasoning level of one and a reasoning level of two was the "length" of the instruction, not the complexity.  *Id.* (emphasis omitted).  The Eleventh Circuit supported this finding with "the description of level three, which

lifts the restriction on how complex the instructions can be—allowing for any 'instructions.'"  *Id.*

Given Defendant's concession and the Eleventh Circuit's precedent, the Undersigned finds that an apparent conflict exists between the limitation to "simple tasks" and an ability to carry out complex instructions, as required by jobs with a reasoning level of three or higher, *see Buckwalter*, 5 F.4th at 1323; *Viverette*, 13 F.4th at 1317.  Thus, the Undersigned finds an apparent conflict existed between the DOT and the VE's testimony that an individual limited to simple tasks could perform the position of account investigator.  *See Buckwalter*, 5 F.4th at 1323; *Viverette*, 13 F.4th at 1317.

Because there was an apparent conflict between the DOT and the VE's testimony, the Undersigned finds that the ALJ was under a duty to resolve the apparent conflict in the manner prescribed in *Washington*.  *See* 906 F.3d at 1326-63.  However, the ALJ failed to ask the VE whether her testimony – as it relates to this issue – was consistent with the DOT, and, if not, to elicit testimony as to the basis of her opinion.  (*See* Tr. at 63-68).

In his opinion, the ALJ found that "the vocational expert's testimony is consistent with the information contained in the [DOT]."  (*Id.* at 26).[11]  Notably, the

---

[11]  As noted above, the ALJ identified an unrelated apparent conflict and specifically resolved it.  (*See* Tr. at 26 ("Vocational testimony as to the effect of being off task on the claimant's occupational base is based on the vocational expert's 35 years of experience and material published by the Department of Labor Wage and Hour division.")).  Neither party attempts to argue that this satisfies the ALJ's obligation to identify and resolve other apparent conflicts.  (*See* Doc. 19 at 15-18).

ALJ's statement is inaccurate in light of the Undersigned's finding that an apparent conflict exists between the VE's testimony and the DOT. Based on this inaccuracy, it is unclear whether the ALJ identified this apparent conflict.

To the extent the ALJ may have implicitly identified the conflict and resolved it by noting that his conclusion is "[b]ased on the testimony of the vocational expert," (*see id.*), the Undersigned again finds such an implicit resolution insufficient because it would have been nothing more than a post-hoc assumption. As noted above, allowing an ALJ to make such an assumption – even a likely assumption – contravenes the Eleventh Circuit's reasoning in *Washington*. *See* 906 F.3d at 1362-65.

Ultimately, the ALJ failed to comply with the requirements of *Washington* – and SSR 00-4p – because the ALJ failed to elicit and obtain a reasonable explanation from the VE. *See id.* at 1362. Rather, the ALJ either failed to identify the apparent conflict or attempted to resolve it by *assuming* an explanation the ALJ deemed to be reasonable. (*See* Tr. at 26). Because the ALJ failed to properly discharge his duty as it applies to this apparent conflict, the Undersigned finds that the ALJ's finding that Plaintiff can perform work as an account investigator is not supported by substantial evidence and remand on this ground is required. *See Washington*, 906 F.3d at 1362.

Ultimately, the Undersigned finds that substantial evidence does not support the ALJ's findings that Plaintiff can perform work as a shellfish preparer or account investigator in light of the ALJ's failure to properly discharge his duty as it applies to the apparent conflicts discussed above. *See Washington*, 906 F.3d at 1362. Additionally, the Undersigned cannot find these errors harmless, despite that no

apparent conflict exists as to the position of routing clerk.  *See Viverette*, 13 F.4th at 1318.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that the ALJ erred in failing to resolve certain apparent conflicts between the VE's testimony and the information contained in the DOT. Accordingly, the Undersigned recommends that the action be remanded for the ALJ to re-evaluate whether work exists in significant numbers that Plaintiff can perform given her RFC, specifically identifying and resolving any apparent conflicts between the testimony of the VE and the DOT.

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.    The decision of the Commissioner be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Commissioner be instructed on remand to do the following:

   Re-evaluate whether work exists in significant numbers that Plaintiff can perform in light of her RFC, specifically identifying and resolving any apparent conflicts between the testimony of the VE and the DOT.

3.    Plaintiff be instructed that any application for fees, costs, or expenses must comply with the Court's Standing Order on Management of Social Security Cases, *In re Administrative Orders of the Chief Judge*, Case No. 3:21-mc-1-TJC, Doc. 43 (Dec. 7, 2021).

4.    The Clerk of Court be directed to enter judgment accordingly, to

terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida

on December 16, 2021.

Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the

Report and Recommendation's factual findings and legal conclusions. A party's

failure to file written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties